UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL DAUS and TRACI DAUS,<br><br>        Plaintiffs,<br><br>  -against-<br><br>JANOVER LLC CAFETERIA PLAN, JANOVER, LLC, Individually, and in its capacity as Plan Administrator and Plan Sponsor of Janover LLC Cafeteria Plan, MARK K. GOODMAN, ALAN J. HOFFMAN, MARSHA P. ELLOWITZ, ANNE MARIE FLYNN, JAY H. FREEBERG, ERIC M. FRIED, CRAIG B. GEIST, ELLIOT M. GLASS, AARON D. GOLDSTEIN, SAMUAL GREENBERGER, MINDY KAMAN, JAMES LOGAN, JOSEPH A. MAFFIA, NANCY MARINAS, CHRISTINE A. MILLER, LEONARD OKUN, KENNETH H. RICK, DOMINIC ROVANO, MARK B. SOLOMON, BARRY L. SUNSHINE, JOSEPH B. TANCER, SECURITY MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, RENAISSANCE LIFE & HEALTH INSURANCE COMPANY OF NEW YORK, RENAISSANCE HOLDING COMPANY, and RENAISSANCE HEALTH SERVICE CORPORATION,<br><br>        Defendants. | **MEMORANDUM AND ORDER**<br><br>Case No. 19-CV-6341 |

*For the Plaintiffs:*
WAYNE J. SCHAEFER
Schaefer Law Group, P.C.
186 West Main Street
Smithtown, NY 11787

*For the Janover Defendants:*
JASON B. LEVIN
Jackson Lewis P.C.
666 Third Avenue, 29th Floor
New York, NY 10017

1

**BLOCK, Senior District Judge:**

This litigation concerns the right of Paul Daus ("Daus") and his spouse Traci Daus (together, "Plaintiffs") to coverage under a life insurance policy he had previously received as an employee of Janover, LLC ("Janover"), and whether Plaintiffs' claims were waived in a previous settlement agreement signed by Janover and Daus following his termination by the company.

Plaintiffs have brought seven different claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. These claims allege a breach of fiduciary duty, and seek recovery of Plaintiffs' lost insurance benefits, damages for a failure to furnish coverage information, a declaration of future benefits, and attorney's fees. The complaint named numerous entities and individuals as defendants: Janover; the Janover LLC Cafeteria Plan; and 21 individual principals of Janover (collectively, the "Janover Defendants"). The complaint also named as defendants Security Mutual Life Insurance Company of New York ("Security Mutual"), the life insurance provider for the plan, along with Renaissance Holding Company and two of its subsidiaries (together, "Renaissance Defendants"), as Security Mutual's successors-in-interest.

On March 27, 2023, Plaintiffs agreed to dismissal with prejudice of all claims against Security Mutual and the Renaissance Defendants, *see* ECF No. 125, leaving the Janover Defendants as the sole remaining defendants. Plaintiffs and the

Janover Defendants have each moved for summary judgment on all claims. For the reasons set forth below, the Court finds that Daus released the Janover Defendants from liability for claims under ERISA in a settlement agreement he signed related to his termination. Accordingly, the Janover Defendants' motion for summary judgment, ECF No. 168, is granted, and Plaintiffs' motion, ECF No. 172, is denied.

## I.

The following facts—drawn from the parties' pleadings, Rule 56.1 statements, and supporting documentation—are undisputed unless otherwise noted. In evaluating each party's motion, the Court has construed all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in that party's favor. *See Capital Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025).

Daus has been a Certified Public Accountant since 1996. In July 2011, Janover hired him as a Senior Tax Manager. Janover has a retirement and benefits plan for its employees (the "Plan"), for which the company is "Plan Administrator." The Plan includes a group term life benefit (the "Group Life Policy"), which was issued by Security Mutual.

On June 23, 2016, Daus became disabled as a result of a medical condition.[1] Daus then took a period of leave under the Family Medical Leave Act until September 23, 2016. Janover then authorized additional leave through November 8, 2016. On that date, Janover sent Daus a letter explaining that it could no longer hold his job open and was terminating him. On February 6, 2017, Daus then filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation by Janover.

On January 9, 2018, Daus, with his counsel, participated in an EEOC mediation session with Janover.[2] At the mediation session, the parties signed a settlement agreement ("Settlement Agreement"), in which Janover paid Daus ▆▆▆▆ in exchange for a general release. Paragraph 1(b) of the Settlement Agreement provides that Janover's ▆▆▆▆ settlement payment:

> "is provided in complete settlement, release and waiver of all claims for alleged lost wages, benefits, compensation, mental, physical. or other personal injuries, pain and suffering, attorneys' fees, costs. and any other relief of any and every kind, known or unknown, asserted or

---

[1] The parties disagree about the nature of Daus' unspecified disability and whether he became "totally disabled" on this date. *See* ECF No. 169-1 at ¶ 32, ECF No. 172-39 at ¶ 30.

[2] Throughout their response to the Janover Defendants' Rule 56.1 Statement, Plaintiffs repeatedly respond that statements about the mediation and Settlement Agreement are "[c]ontroverted to the extent the statement asserts or implies that Mr. Daus participated in mediation in a manner sufficient to result in a knowing and voluntary waiver by plaintiffs of unknown claims." *See* ECF No. 169-1, ¶¶ 44–83. This is a legal argument, not a factual dispute. *See Sattar v. U.S. Dep't of Homeland Sec.*, 669 F. App'x 1, 3 (2d Cir. 2016) ("Rule 56.1 statements are statements of fact rather than legal arguments."); *Gueye v. People's United Bank, Nat'l Assoc.*, No. 18-CV-5961, 2021 WL 10351980, at *1 n.2 ("[T]he Court will not consider legal arguments contained in [a party's] reply Rule 56.1 statement.").

unasserted, that Charging Party may have against the Releasees (as defined in paragraph 3 below)[.]"

Settlement Agreement at ¶ 1(b), ECF No. 168-14. Paragraph 3 in turn provides:

"Charging Party [Daus] knowingly and voluntarily and forever discharges Janover LLC, its current and former parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns including employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs (excluding Metlife Disability Plan) and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), **of and from any and all claims, known and unknown, asserted or unasserted**, which Charging Party has or may have against Releasees as of the date of the execution of this Agreement, including, but not limited to, any alleged violation of: . . . **The Employee Retirement Income Security Act of 1974** . . . [and] all other local laws; any other federal, state or local law, rule, regulation or ordinance; any public policy, contract, tort, or common law; or, any claim for costs, fees or other expenses, including attorneys' fees incurred in these matters; and any amendments to the foregoing laws."

*Id.* at ¶ 3(a) (emphasis added).

The Settlement Agreement also provided that Daus could consider the agreement for 21 days, had 7 days to revoke the agreement, and that he had consulted with counsel prior to signing. *Id.* at ¶ 17. Daus did not revoke the agreement, and Janover made the agreed-upon settlement payment.

On December 6, 2018, Daus subsequently wrote to Janover accusing the company of failing to have notified him at the time of his termination that he had the right to convert his coverage under the Group Life Policy to an individual life

5

policy, for which no premiums would be due because he was "totally disabled." He asked Janover to confirm he was still covered under the Group Life Policy. On January 14, 2019, a Janover manager responded, stating that he was not so covered.[3] Daus then appealed to the insurance company, Security Mutual, asking to be reinstated to the Group Life Policy or permitted to convert the Group Life Policy into an individual policy, but Security Mutual denied these appeals. The Plaintiffs then initiated this litigation against the Janover Defendants, Security Mutual, and the Renaissance Defendants. Plaintiffs agreed to dismiss Security Mutual and the Renaissance Defendants after reaching a separate settlement agreement with those parties in March 2023. *See* ECF No. 124.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for

---

[3] The Janover Defendants take the position that the authority to make any decision to grant, deny, or determine Daus' request lay with Security Mutual. *See* ECF No. 172-39 at ¶ 102. However, it is undisputed that a Janover senior manager responded to Daus and did not provide the confirmation of coverage he had requested.

the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

The Janover Defendants advance two arguments as to why they are entitled to summary judgment. They first argue that there is no dispute of material fact that by signing the Settlement Agreement Daus knowingly and voluntarily waived all claims under ERISA—that is, all the claims at issue in this litigation—against Janover. The Janover Defendants' second argument is that, in the alternative, the bulk of the claims concern issues related to the administration of the insurance plan that were solely in the control of Security Mutual, not the Janover Defendants.

**A.**

"It is . . . well-established that ERISA claims are validly waived as long as the waiver is knowing and voluntary under the totality of the circumstances." *Yablon v. Stroock & Stroock & Lavan Ret. Plan & Tr.*, 98 F. App'x 55, 57 (2d Cir.

7

2004) (citing *Laniok v. Advisory Comm. of the Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367 (2d Cir. 1991)). In *Laniok*, the Second Circuit set forth six non-exhaustive factors to consider in determining knowledge and voluntariness:

> "1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law."

935 F.2d at 1368 (citing *Bormann v. AT&T Commc'ns*, 875 F.2d 399, 403 (2d Cir. 1989)

Both Plaintiffs and the Janover Defendants contend that each factor cuts in their favor. The Court thus takes them each in turn.

First, Daus' education and business experience clearly weigh in favor of finding the waiver valid. Prior to signing the Settlement Agreement, he had been a CPA since 1996 and worked for many years as a tax accountant, including as a Senior Tax Manager, reviewing the work of junior accountants. Courts have found considerably less experienced individuals to have the requisite sophistication. *See, e.g.*, *Neal v. JPMorgan Chase Bank, N.A.*, No. 10-CV-1157, 2012 WL 3249477, at *9 (E.D.N.Y. Aug. 8, 2012) (finding experience of plaintiff who earned credits towards finance major and "worked in the insurance and financial services industry

8

for several years and had held at least one supervisory position" to favor validity of waiver).

Second, concerning the time to review the agreement, the Janover Defendants observe that the plain text of the Settlement Agreement provided Daus 21 days to consider it before signing, and could revoke it for up to 7 days afterward. *See* Settlement Agreement at ¶ 17. This, coupled with language in the Settlement Agreement confirming that Daus was signing only after giving it "due consideration," weighs in favor of its validity. *See, e.g., Schuyler v. Sun Life. Co. of Canada*, No. 20-CV-109095, 2023 WL 2388757, at *4 (S.D.N.Y. Mar. 7, 2023) (finding agreement that "plainly states" plaintiff has had opportunity to consider and providing seven-day revocation period favors validity). Daus contends that the EEOC mediator told him that he had to sign the agreement that day, or the offer would be withdrawn. *See* Daus. Dep. 281:9–24, ECF No. 168-4. However, even if this were so, it would not contravene the undisputed fact that he had seven days to consider and revoke the agreement after the conversation with the mediator.[4]

Third, Daus participated personally in the EEOC mediation session at which the Settlement Agreement was struck. At his deposition, Daus implicitly acknowledged that he was involved in discussions concerning the settlement

---

[4] Daus' deposition testimony indicates his lawyer was present for this conversation with the EEOC mediator, further undermining an inference that he was unduly rushed. *See* Daus Dep. pp. 281–282.

9

amount. *See* Daus. Dep. 280:21–281:03. Though the provenance of many of the Settlement Agreement's terms is unclear, the evidence suggests Daus at least understood he could negotiate these terms and made demands, which resulted in Janover increasing the money it was offering. *See id.* At minimum, consideration of this factor does not cut against finding Daus made a knowing and voluntary waiver. *See, e.g., Douglas v. N.Y. Presbyterian Hosp.*, No. 15-CV-9473, 2016 WL 7046817, at *4 (S.D.N.Y. Dec. 2, 2016) (favoring waiver where plaintiff "well understood her ability to negotiate the terms of the agreement, as evidenced by her escalating demands as to the adequacy of the settlement amount").

    Fourth, the text of the release clause is unambiguous and expressly encompasses ERISA. Plaintiffs' argument that the Settlement Agreement was unclear because the document "consists of largely boilerplate language," and included an additional sweeping release clause is unavailing. ECF No. 169 at 14. Though the language Plaintiffs reference is generic, it sits alongside plain language explicitly releasing liability for claims under ERISA directly underneath an underlined heading titled "General Release of All Claims." Settlement Agreement at ¶ 3(a). This factor favors enforcement; district courts have enforced releases of ERISA claims on the basis of much more general language, in which the statute went entirely unmentioned. *See He v. Cigna Life Ins. Co. of N.Y.*, No. 14-CV-2180, 2017 WL 4350570, at *3 (S.D.N.Y. July 7, 2017).

Fifth, Plaintiffs do not dispute that Daus was represented by an attorney before and during the mediation and signing of the Settlement Agreement. *See* ECF No. 169-1 at ¶¶ 45–46, 54, 80. Rather, Plaintiffs contend that "her [i.e., the attorney's] presence at the mediation had no discernible impact," and that she was ineffectual. ECF No. 169 at 19. But the relevant consideration is simply whether Daus was represented by counsel; the validity of the waiver is not contingent on the quality of the advice he solicited. *See, e.g.*, *Bradley v. TIAA-CREF*, No. 04-CV-2434, 2005 WL 2709177, at *4 (Oct. 20, 2005) (upholding waiver despite attorney's incorrect advice that plaintiff could still pursue claims after signing).

Lastly, Plaintiffs contend that the ▮▮▮▮▮ settlement payment was so meager relative to his right to a potential $500,000 life insurance policy at no premium cost, that this final factor weighs against a finding that he knowingly and voluntarily waived this right. The Janover Defendants observe that the insurance policy provided only a potential benefit, dependent on both Daus' passing away during the 20-year term and the inapplicability of various policy exclusions. Additionally, Daus' contention that he would have had to pay zero premiums for this policy because he was "totally disabled" is subject to challenge, further reducing the hypothetical value of this right. The proper dollar value to place on the potential—though uncertain—possibility of obtaining this insurance policy in

11

these circumstances will vary greatly from one person to another. The Court cannot say this factor strongly favors or disfavors enforcement.

In summary, though some of the *Laniok-Bormann* factors give a mixed or neutral signal, when considered in tandem they clearly indicate that Daus knowingly and voluntarily waived ERISA claims against the Janover Defendants. *See Fletcher v. Palazzo*, 151 F. App'x 73, 75 (2d Cir. 2005) ("The list is not exhaustive, and all factors need not be met or considered."). Ultimately, Plaintiffs' argument rests on a misunderstanding of what it means to "knowingly" waive claims. Daus' waiver of ERISA claims was valid whether or not he had contemplated a more specific, alleged right to convert the insurance policy he had lost following the termination that gave rise to his EEOC charge. *See Errico v. Pfizer Consol. Pension Plan*, No. 19-CV-10211, 2021 WL 1565288, at *15 (S.D.N.Y. Apr. 20, 2021) ("[Plaintiff's] argument rests on a faulty premise about what make[s] a release 'knowing.' A release is signed 'knowingly' if the person signing it is aware and understands that he is giving up certain identified rights . . . As long as [Plaintiff] was aware that he was signing a release that barred him from bringing whatever claims he might have—whether he knew about them or not— the Release was signed 'knowingly.'").

**B.**

Plaintiffs make several further arguments. The most substantial one—articulated in their opposition to the Janover Defendants' motion and in support of Plaintiffs' own—is that on the day of the mediation Daus' faculties were seriously impaired by neck and back pain and a recent change in his medication. █

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████
█████████████████
████████████████████

The Janover Defendants insist that this argument rests on the inadmissible hearsay accounts of Daus' doctor and pharmacist, *see* ECF No. 172-40 at 22–23, while Plaintiffs maintain the evidence is admissible under the medical records exception, *see* ECF No. 172-50 at 16 (citing Fed. R. Evid. 803(6)). Regardless of

13

the resolution of the hearsay issue, even if the Court accepts Plaintiffs' account, the proffered evidence is insufficient to overcome the presumption of Daus' competency. *See Cardona v. Cmty. Access, Inc.*, No. 11-CV-4129, 2013 WL 304519, at *4 (E.D.N.Y. Jan. 25, 2013) (explaining that a party to a settlement agreement is presumed competent, and bears the burden of proving incompetency in order to overturn its validity).

"When attempting to deem a party incompetent, it is not sufficient to show a general lack of capacity; it must be shown that the person was incompetent at the time of the transaction." *Rudolf Nureyev Dance Found. v. Noureeva-Francois*, 7 F. Supp. 2d 402, 416 (S.D.N.Y. 1998) (noting that those with Alzheimer's, for example, are presumed to be competent (citing *Feiden v. Feiden.* 151 A.D.2d 889, 890 (3d Dep't 1989))). The pain, discomfort, and stress that Daus recounts is serious, but is not of the sort that suggests he was unable to willingly and voluntarily enter into the Settlement Agreement. *See, e.g.*, *Lang v. Tewksbury Twp.*, No. 10-CV-2564, 2012 WL 503677, at *6 (D.N.J. Feb. 16, 2012) ("While the Court does not doubt that Defendant suffers from serious and debilitating mental conditions [bipolar disorder, PTSD, and severe depression] as a result of his military service, the record does not support a finding that he was unable to understand the terms of the settlement agreement to which he voluntarily agreed[.]"); *c.f. U.S. v. Brooks*, No. 06-CR-550, 2013 WL 264911, at *3 (E.D.N.Y.

14

June 12, 2013) (denying motion for reconsideration premised on evidence of defendant's benzodiazepine withdrawal symptoms during trial).

Plaintiffs separately contend that even if Daus has waived his claims, his wife, Traci Daus, has independent standing to assert these same claims. *See* ECF No. 169 at 15–16. It is true that an intended beneficiary generally may sue under a contract. *See, e.g.*, *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 338 (S.D.N.Y. 2018) ("As a general matter, non-parties to a contract may sue under that contract if they are its intended beneficiaries."); *Vestal v. Pontillo*, 183 A.D.3d 1146. 1150 (3d Dep't 2020) ("[W]here an agent's negligence results in an insured being without coverage, the agent may be liable for damages sustained by an injured third party if the third party was the intended beneficiary of the insurance contract[.]").[5] However, while Traci Daus may have standing, she would ultimately have to make the same showing as her husband as to these claims, which would likewise fail as a matter of law as they were encompassed by the waiver. *See* Settlement Agreement Preamble (explaining Daus is executing release on his "own behalf and on behalf of Daus' heirs, executors, administrators, successors and assigns"); *c.f. Moultrie v. Progressive Direct Ins. Co.*, 824 F. App'x 172, 175 (4th Cir. 2020) (per curiam) (explaining circumstance where implied or

---

[5] Though ERISA is a federal statute, the Court consider basic principles of contract law in evaluating this argument.

15

apparent authority empower spouse to waive auto insurance on another spouse's behalf).

## III.

Because the Court finds that all of Plaintiffs' ERISA claims were validly encompassed by the Settlement Agreement provisions that released Janover from liability "from any and all claims" under ERISA in connection with Daus' termination, it need not evaluate the Janover Defendants' alternative argument that certain of these claims concern matters for which only Security Mutual could be liable. It may be that Security Mutual, with which Daus did not sign a settlement agreement, was liable on some of these claims. It may not be. In any event, Security Mutual is no longer a party, because Plaintiffs agreed to their dismissal.

Additionally, the Court's finding of a valid waiver and grant of summary judgment to the Janover Defendants necessarily entails the denial of Plaintiffs' own motion for summary judgment.

## IV.

For the foregoing reasons, the Janover Defendants' motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED. The clerk of court is directed to close this case.

**SO ORDERED.**

        /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 22, 2025